**United States District Court**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| REGINALD REMBERT and REMBERT ENTERPISES, INC. | § | |
| | § | |
| *Plaintiffs*, | § | |
| v. | § | Civil Action No. 4:25-cv-244 |
| | § | Judge Mazzant |
| TOWN OF FLOWER MOUND, TEXAS, | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Plaintiffs' Motion for Partial Summary Judgment (Dkt. # 28), Defendant Town's Motion for Summary Judgment (Dkt. # 29), and Defendant Town's Objections to Plaintiffs' Summary Judgment Evidence and Motion to Strike (Dkt. # 42).

Having considered the Motions and the relevant pleadings, the Court finds that Plaintiffs' Motion for Partial Summary Judgment (Dkt. # 28) should be **GRANTED in part** and **DENIED in part**, Defendant Town's Motion for Summary Judgment (Dkt. #29) should be **DENIED,** and Defendant Town's Objections to Plaintiffs' Summary Judgment Evidence and Motion to Strike (Dkt. #42) should be **DENIED as moot**.

**BACKGROUND**

This is a Fair Housing Act ("FHA") case concerning the Defendant's decision to deny Plaintiffs' Master Plan amendment ("MPA") request and zoning amendment request (Dkt. # 1 at ¶ 1). Plaintiffs are Reginald Rembert ("Rembert") and Rembert Enterprises, Inc. ("Rembert Enterprises") (Dkt. # 1 at ¶¶ 11, 13). Plaintiffs wanted to develop single-family homes in Flower Mound in a development called Emerald Place (Dkt. #41 at p. 1). The proposed

Emerald Place development did not comply with existing zoning ordinances or the Town's Master Plan (Dkt. #29 at p. 6). So, Plaintiffs submitted a Master Plan amendment request and zoning change request (Dkt. #1 at ¶ 28; Dkt. #6 at ¶ 28).

After discussions with the Town and residents, Plaintiffs submitted revised requests (Dkt. #29 at p. 10). Defendant denied these requests (Dkt. #1 at ¶ 1; Dkt. #6 at ¶ 1). Plaintiffs filed suit, claiming Defendant denied Plaintiffs' requests based on discrimination toward Plaintiff Rembert, who is Black or African American (Dkt. #1 at ¶ 6; Dkt. #6 at ¶ 1). Plaintiffs did not intend to reside in Emerald Place (Dkt. #29-26 at p. 42). Plaintiffs do not contend any future occupant of Emerald Place is a member of a protected class (Dkt. #38 at p. 20).

Plaintiffs filed their Motion for Partial Summary Judgment and Defendant filed its Motion for Summary Judgment (Dkt. #28; Dkt. #29). Defendant filed a response to Plaintiffs' motion and Plaintiffs filed a response to Defendant's motion (Dkt. #41; Dkt. #38). Plaintiffs filed a reply (Dkt. #45). Defendant filed Objections to Plaintiffs' Summary Judgment Evidence and Motion to Strike (Dkt. #42). Plaintiffs filed their response, and Defendant filed its reply (Dkt. #46; Dkt. #47).

## LEGAL STANDARD

### I. Summary Judgment

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Dispute over a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019).

Trial courts "must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the nonmovant." *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020).

The party moving for summary judgment bears the initial burden of identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant satisfies this burden as to a claim or defense for which summary judgment is sought, evidence must be offered that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may discharge the burden by demonstrating the absence of evidence supporting the nonmovant's case. *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried this initial burden, the nonmovant "must go beyond the pleadings and present specific facts indicating a genuine issue for trial in order to avoid summary judgment." *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden—reciting "barebones, conclusory, or otherwise-unsupported assertions" are insufficient. *Hassen v. Ruston La. Hosp. Co., L.L.C.*, 932 F.3d 353, 355–56 (5th Cir. 2019); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). And courts are not required "to sift through the record in search of evidence to support a party's opposition to summary

judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). Rather, to have a request for summary judgment dismissed, a nonmovant must show with "'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citing *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). Courts must "'draw all reasonable inferences in favor of the nonmoving party' and 'refrain from making credibility determinations or weighing the evidence.'" *Butts v. Martin*, 877 F.3d 571, 582 (5th Cir. 2017) (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).

## II. Standing and the Fair Housing Act

Standing is a prerequisite to the exercise of federal jurisdiction. *See Cole v. Gen. Motors Corp.*, 484 F.3d 717, 721 (5th Cir. 2007). The doctrine of standing addresses who may properly bring suit in federal court. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). It "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Id.* To satisfy the case-or-controversy requirement of Article III of the Constitution, a plaintiff must show: (1) they have suffered an "injury in fact"; (2) the injury is "fairly traceable" to the actions of the defendant; and (3) the injury will "likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). An injury in fact must be "concrete and . . . actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations omitted). Moreover, "the injury must affect the plaintiff in a personal and individual way." *Id.* at 560 n. 1. To give full effect to the broad remedial purposes of the FHA, and to encourage its enforcement by private litigants, Congress has abrogated prudential standing under the FHA, thus extending standing to the limits

of Article III. *Lincoln v. Case*, 340 F.3d 283, 289 (5th Cir. 2003) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982)).

In addition, the recognized presumption "that a statute ordinarily provides a cause of action 'only to plaintiffs whose interests fall within the zone of interests protected by the law invoked'" applies in the FHA context. *Bank of Am. Corp. v. City of Miami, Fla.*, 581 U.S. 189, 197 (2017) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014)). To determine if "a plaintiff comes within 'the zone of interests,'" the Court must determine, using "traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id.* (quoting *Lexmark Int'l., Inc.*, 572 U.S. at 127).

## ANALYSIS

### I. Defendant's Objections and Motion to Strike

In making its decisions, the Court has not relied in any manner upon the evidence the parties object to or move to strike. So, the Court **DENIES** Defendant's objections and motion to strike as moot.

### II. Application of the FHA

Plaintiffs move for partial summary judgment on their ability to establish constitutional standing (Dkt. #28 at p. 4). In Defendant's motion for summary judgment, Defendant argues the FHA does not apply to Plaintiffs' claims (Dkt. #29 at p. 15). In other words, Defendant challenges Plaintiffs' statutory standing to sue under the FHA. Therefore, the Court will determine if Plaintiffs meet both the zone-of-interest and constitutional standing requirements at the summary judgment stage.

### A. The Zone of Interest

The central issue here is if a developer has standing to assert a claim under 42 U.S.C. § 3604(a) when the alleged discrimination is against a developer who does not intend to reside at the denied dwelling. As in all cases of statutory interpretation, the Court begins with the text of the statute. *Taylor v. Acxiom Corp.*, 612 F.3d 325, 335 (5th Cir. 2010); *McLaurin v. Noble Drilling (US) Inc.*, 529 F.3d 285, 288 (5th Cir. 2008) (citing *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992)). If "the plain language of a statute is unambiguous and does not lead to an absurd result," the Court's "inquiry begins and ends with the plain meaning of that language." *Texas Brine Co. v. Am. Arb. Ass'n*, 955 F.3d 482, 486 (5th Cir. 2020) (citing *Dunn-McCampbell Royalty Int., Inc. v. Nat'l Park Serv.*, 630 F.3d 431, 438 (5th Cir. 2011). Furthermore, "[t]he absurdity bar is high . . . [t]he result must be preposterous." *Id.* (citations omitted).

Under the FHA, any "aggrieved person" has a private cause of action. 42 U.S.C. § 3613(a)(1)(A). An "aggrieved person" includes any person who "claims to have been injured by a discriminatory housing practice." 42 U.S.C. § 3602(i). A discriminatory housing practice includes an unlawful act under § 3604(a). 42 U.S.C. § 3602(f). Plaintiffs claim to have been injured only under § 3604(a) (Dkt. #38 at p. 28). So, if their claim is encompassed by § 3604(a), Plaintiffs met their burden to prove injury by a discriminatory housing practice and are aggrieved persons. Under the relevant § 3604(a) provisions here, it is unlawful "[t]o refuse to sell or rent . . . or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a).

In analyzing § 3604(a), the Court first considers the phrase "otherwise make unavailable or deny." *Id.* Defendant argues Plaintiffs could build homes under existing zoning ordinances and therefore Defendant did not deny a dwelling when it denied the MPA and zoning amendment

request (Dkt. #29 at p. 15). However, the existing Master Plan and zoning did not allow for the same number of dwellings as Plaintiffs sought to develop (Dkt. #29–27 at p. 8). The Emerald Place MPA and rezoning request would have allowed for 44 homes (Dkt. #28–3 at p. 2). The FHA requires a defendant to make a dwelling unavailable. 42 U.S.C. § 3604(a). Under the plain language of the FHA, Defendant made at least some homes unavailable because Plaintiffs could not develop the same number of homes under the existing Master Plan.[1]

Next, Emerald Place must be a dwelling or dwellings. 42 U.S.C. § 3604(a). A dwelling is "a building . . . designed or intended for occupancy as . . . a residence by one or more families." 42 U.S.C. § 3602(b). Defendants designed the Emerald Place homes and intended them for occupancy as residences by one or more families (Dkt. #29–22 at p. 1; Dkt. #28–3 at p. 2). Emerald Place meets the statutory definition for a dwelling here.

The dwellings must be denied "to any person because of race." 42 U.S.C. § 3604(a). First, Rembert and Rembert Enterprises are both people under the FHA. Under 42 U.S.C. § 3602(d), a person includes "one or more individuals" and "corporations." 42 U.S.C. § 3602(d). Rembert is an individual (Dkt. # 1 at ¶ 11; Dkt. #6 at ¶ 11). Rembert Enterprises, Inc. is a corporation (Dkt. # 1 at ¶ 11; Dkt. #6 at ¶ 11). So, Plaintiffs are "people" here.

Defendant's argument turns on the idea that it did not deny dwellings "because of race" because Plaintiffs never intended to reside at Emerald Place and the anticipated future residents of Emerald Place are not protected class members. Under Defendant's reasoning, "there is no causal

[1] Defendant also argues its denial falls within its discretionary zoning power (Dkt. #29 at 22). While a municipality may be able to use this power without inherently violating due process, this power does not allow a municipality to defy FHA restrictions on discriminatory housing practices. *See Mont. Fair Hous., Inc. v. City of Bozeman*, 854 F.Supp.2d 832, 840 (D. Mont. 2012).

nexus between the alleged discrimination and the alleged denial of the use of a dwelling," so the FHA does not apply. *Home Quest Mortg. LLC v. Am. Fam. Mut. Ins. Co.*, 340 F. Supp. 2d 1177, 1186 (D. Kan. 2004). Several district court opinions agree with Defendant, holding that because the plaintiff sought to use the dwelling as a commercial venture, the FHA did not apply. *Home Quest Mortg.*, 340 F. Supp. 2d at 1186. ("Ms. Huffman owned the upstairs residential rental unit purely as a commercial endeavor."); *Fillyaw v. Cmty. Nat'l Bank & Tr.*, No. 3:22-CV-1112-N (BH), 2023 WL 6797540, at *4 (N.D. Tex. Aug. 22, 2023), *report and recommendation adopted*, No. 3:22-CV-1112-N (BH), 2023 WL 6797496 (N.D. Tex. Oct. 13, 2023) ("[T]he focus is on whether the individuals that are subject to discrimination use or intend to use the building as a dwelling or residence."); *Shaikh v. City of Chicago*, No. 00 C 4235, 2001 WL 123784, at *4 (N.D. Ill. Feb. 13, 2001) ("[T]he FHA does not apply to the sale of residential property to a person who . . . has no intention of residing in the property . . . ."); *Miller v. First United Bank & Tr. Co.*, No. CIV-22-185-F, 2022 WL 4134768, at *2 (W.D. Okla. Sept. 12, 2022) ("[T]here are no factual allegations that any of individual plaintiffs intended to reside in the apartment complex."). The parties do not cite, and the Court has not identified, any circuit court opinion addressing this issue.

However, a plain reading of the FHA demonstrates that § 3604(a) does not require a plaintiff himself to intend to reside at the dwelling. Section 3604(a) does not require a defendant to discriminate based on the race of a dwelling's future occupant. 42 U.S.C. § 3604(a). Instead, a defendant must make a dwelling unavailable "to any person because of race." 42 U.S.C. § 3604(a). Defendant made the Emerald Place dwellings unavailable to Plaintiffs when it denied the MPA

request and zoning amendment request (Dkt. #1 at ¶ 1; Dkt. #6 at ¶ 1).[2] While it may not be the FHA's intent to protect a developer under these circumstances, the Court must follow the plain language of the statute. *See Texas Brine*, 955 F.3d at 486.[3] For these reasons, summary judgment for Defendant on these grounds is **DENIED**.

### B. Injury-in-fact

Plaintiffs argue they are entitled to summary judgment on their constitutional standing (Dkt. #28 at pp. 26, 27). As to Rembert Enterprises, Plaintiffs argue only that Rembert Enterprises suffered out-of-pocket expenses and lost profits (Dkt. #28 at p. 27). Plaintiffs only cite Rembert's declaration as evidence supporting Rembert Enterprises' injury (Dkt. #28 at p. 27). However, Rembert's declaration states only that Rembert, and not Rembert Enterprises, suffered out-of-pocket damages and lost revenue from Defendant's denial (Dkt. #28-3 at p. 6). So, Plaintiffs do not show that Rembert Enterprises sustained an injury. However, Plaintiffs did not prevent themselves from later proving Rembert Enterprises sustained an injury. Plaintiffs' motion for summary judgment as to Rembert Enterprises' standing is **DENIED** on these grounds.

As to Defendant's motion for summary judgment, Defendant did not bear its initial summary judgment burden of establishing the absence of a genuine issue of material fact regarding Rembert Enterprises' injury. Defendant's own motion for summary judgment does not challenge

---

[2] Defendant did not meet its summary judgment burden regarding whether it denied the dwelling "because of race," as discussed below. *See infra* III. So, the Court cannot conclude that Plaintiffs lack statutory standing based on this "because of race" statutory language. Plaintiffs did not move for summary judgment on their ability to establish statutory standing (*See* Dkt. #28).

[3] The district court opinions cited dismissing the FHA claim rely on the overall purpose of the FHA to provide "fair housing." 42 U.S.C. § 3601; *Shaikh*, 2001 WL 123784 at *4; *Home Quest Mortg.*, 340 F.Supp.2d at 1186; *Miller*, 2022 WL 4134768 at *2 (relying on *Home Quest Mortg.*); *Filyaw*, 2023 WL 6797540 at *3 (relying in part on *Shaikh* and *Home Quest Mortg.*). The Court notes that the FHA's express policy is to provide fair housing. 42 U.S.C. § 3601. However, without binding authority to the contrary, the Court is bound to follow the plain meaning of the FHA.

either Plaintiffs' constitutional standing (*See* Dkt. #29). In its Response to Plaintiffs' Motion for Summary Judgment, Defendant argues any injury Rembert Enterprises sustained is really Rembert's because he is the 100% owner of Rembert Enterprises (Dkt. #41 at p. 20). However, a stockholder does not have standing to bring suit for injuries sustained by a corporation because a corporation's injuries are its own. *L & F Homes & Dev., L.L.C. v. City of Gulfport*, 538 F. App'x 395, 408 (5th Cir. 2013) (per curiam). So, Rembert Enterprises' injury is its own. Defendant does not provide additional evidence that prevents Plaintiff from later establishing Rembert Enterprises sustained an injury. Without dispositive evidence from either party, there are genuine issues of material fact regarding whether Rembert Enterprises suffered any injury. Defendant's motion for summary judgment as to Rembert Enterprises' constitutional standing is **DENIED** on these grounds.

As to Rembert, Plaintiffs argue Rembert suffered out-of-pocket expenses, lost profits, and emotional distress damages (Dkt. #28 at p. 26). Expenses incurred in support of a petition for rezoning are cognizable injuries. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262 (1977). Rembert incurred the out-of-pocket application expenses forming the MPA and rezoning request that Defendant denied. Rembert provides evidence of his own injuries apart from Rembert Enterprises' injuries because Plaintiffs were owners of the project in equal shares (Dkt. #41-8 at p. 4). Therefore, Plaintiffs satisfied the injury-in-fact element as to Rembert's constitutional standing.

### C. Traceability

The Court will continue its analysis as to Rembert's constitutional standing. To satisfy the causation element of standing, Rembert must establish his injury is fairly traceable to Defendant's denial. *See Lujan*, 504 U.S. at 560 (citation omitted). Defendant argues there is no evidence of racial

animus attributable to Defendant (Dkt. #41 at p. 15). However, Defendant denied the MPA and zoning amendment application (Dkt. #1 at ¶ 1; Dkt. #6 at ¶ 1). These denials are fairly traceable to Defendant, so Rembert established the causation element of standing.

**D. Redressability**

Finally, the Court considers the Article III standing redressability requirement. To satisfy the redressability element of standing, Rembert must establish his injury will be redressed by a favorable decision. *See Lujan*, 504 U.S. at 561. Rembert's out-of-pocket damages would be redressed by a damages award. Therefore, Plaintiffs' motion for summary judgment as to Rembert's constitutional standing is **GRANTED**.

**III. Disparate Treatment**

Next, Plaintiffs move for summary judgment on their ability to establish a *prima facie* case of disparate treatment (Dkt. #28 at p. 11). Defendant moves for summary judgment on Plaintiffs' inability to establish a disparate treatment claim (Dkt. #29 at p. 15).

After careful review of the record and the arguments, the Court is not convinced that Plaintiffs have met their burden demonstrating that there is no material issue of fact as to Plaintiffs' claim entitling Plaintiffs to judgment as a matter of law. However, the Court is also not convinced that Defendant has met its burden demonstrating that there is no material issue of fact as to Plaintiffs' claim entitling Defendant to judgment as a matter of law.

## CONCLUSION

The Court therefore **ORDERS AS FOLLOWS**:

1. Plaintiffs' Motion for Partial Summary Judgment (Dkt. # 28) is hereby **GRANTED in part** and **DENIED in part**.

2. Defendant Town's Motion for Summary Judgment (Dkt. #29) is hereby **DENIED**.

3. Defendant Town's Objections to Plaintiffs' Summary Judgment Evidence and Motion to Strike (Dkt. # 42) are hereby **DENIED as moot**.

**IT IS SO ORDERED.**

**SIGNED this 9th day of October, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE